**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIN MELCHER BEAM,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON *et al.*,<br><br>Defendants. | Civil Action No. 20-19217 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Johnson & Johnson ("J&J"), Johnson & Johnson Healthcare Services, Johnson & Johnson Services, Inc. ("JJS"), Ethicon, Inc. ("Ethicon"), Ethicon US LLC, and Todd Tetreault's ("Tetreault," and collectively, "Defendants") Motion to Dismiss Plaintiff Erin Melcher Beam's ("Beam") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 36.) Beam opposed (ECF No. 42), and Defendants replied (ECF No. 43). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Defendants' Motion and further grants Beam leave to file a second amended complaint to cure the deficiencies outlined in this Memorandum Opinion.

I.  **BACKGROUND**

This is a case about alleged discrimination and retaliation, brought by a former employee. (*See generally* First Amended Complaint (the "FAC"), ECF No. 19.) From 2001 to 2010, and from 2011 until her termination in 2019, Beam worked for Defendants in various capacities. (*Id.* ¶¶ 12, 14.) The alleged harassment and gender discrimination against Beam began in 2015 when she transitioned to a role as Senior Manager in Marketing and began working under the supervision of Matt Knipmeyer ("Knipmeyer"). (*Id.* ¶¶ 18-22.) Beam claims that, among other things, Knipmeyer regularly excluded her from discussions, commented on her status as a working mother, and, on one occasion, compared her to his wife in a derogatory manner. (*Id.* ¶¶ 19, 25.) She further alleges that Knipmeyer retaliated against her because she objected to the termination of a Black employee and, on numerous occasions, had reported her concerns about Knipmeyer's conduct to various members of Human Resources ("HR"), such as to Parvin Sharma ("Sharma"), and to Janis Smith-Gomez ("Gomez"), the Vice President of Marketing. (*Id.* ¶¶ 20, 25-28.) Knipmeyer's alleged retaliation consisted of, among other things, removing Beam from working on more visible projects, bullying Beam, and encouraging Beam to quit. (*Id.* ¶¶ 29-30.) Beam attempted to remedy this retaliation through making further complaints to various personnel. (*Id.* ¶¶ 32-35.) For example, in January 2016, Beam met with Gomez to discuss Knipmeyer's retaliatory conduct, yet Gomez rebuffed her and asked her to leave. (*Id.* ¶ 36.) Beam then made more complaints to various members of HR, which resulted in, what Beams alleges to be, an internal, flawed investigation of Beam's complaints that ultimately proved unfruitful. (*Id.* ¶¶ 37-39.)

Much of the FAC revolves around Beam's contentions that Defendants failed to provide certain higher performance ratings and bonuses to which Beam believes she was entitled based on her job performance. (*Id.* ¶¶ 38-50.) For example, Beam alleges that in February 2016, she received

a lower bonus than she previously received only as a result of Knipmeyer's retaliation; this lower compensation continued, even after Beam began a new position in June 2016 as Senior Deal Manager with a different group, where she reported to Senior Director Ruth Chang ("Chang"). (*Id.*) Beam also alleges that Tetreault, who was a Vice President and Manager, began to retaliate against her for participating in an investigation by another employee of Tetreault in August 2017; such retaliation again included lower compensation. (*Id.* ¶¶ 13, 52-56.)

The FAC then switches gears to focus on Beam's medical history and Defendants' response to it. Beam alleges that various medical conditions rendered her disabled at times and led to her taking a medical leave of absence in February 2018. (*Id.* ¶¶ 58-61.) She contends that prior to taking leave, she had to disclose her medical condition in front of various team members and that Chang disclosed her medical condition without Beam's permission. (*Id.* ¶ 63.) When Beam returned to work around May 2018, she alleges various other wrongful acts ensued, including that she was denied an accommodation to participate in a team meeting remotely despite informing her team of medical travel restrictions. (*Id.* ¶¶ 67-68.) In November 2018, Katie Fischer ("Fischer") became Beam's new manager. (*Id.* ¶ 72.) With her, Beam discussed her medical situation and need to take another medical leave in the future. (*Id.* ¶¶ 74-75.) Shortly thereafter, Fischer presented Beam with a document that was critical of Beam's performance and advised Beam that she had thirty days to comply with it. (*Id.* ¶ 76.) Despite receiving positive feedback from Fischer, at the end of the thirty-day period, Beam was put on a Performance Improvement Plan ("PIP"). (*Id.* ¶¶ 76-78.) Beam subsequently filed a complaint with Employee Relations ("ER") and, in March 2019, requested and received intermittent family leave in connection with an upcoming surgery. (*Id.* ¶¶ 80-81.) ER subsequently informed Beam that no action would be taken against her at the end of the PIP period in April 2019, although Fischer expressed her displeasure at Beam's leave

request. (*Id.* ¶¶ 82, 111.) When Beam returned to work in May 2019, Fischer advised Beam that she was terminated for "performance." (*Id.* ¶ 85.) In October 2019, Defendants initiated a lawsuit—which was ultimately dismissed—to recover $10,000 in tuition reimbursement that they contributed to Beam's law school education. (*Id.* ¶¶ 91, 144-45; Pl.'s Opp'n Br. 9, ECF No. 42.) Beam further alleges that both her termination and the post-termination lawsuit constitute retaliation. (FAC ¶ 93.)

On December 14, 2020, Beam filed this action. (ECF No. 1.) On December 16, 2021, the United States of America declined intervention (ECF No. 11) and the Honorable Freda L. Wolfson directed the Clerk of the Court to unseal the matter and restore it to the Court's active docket (ECF No. 12).[1] The FAC followed in April 2022 and alleges as follows: (1) violation of the anti-retaliation provisions of the Federal False Claims Act, 31 U.S.C. § 3730(h) ("Count One"); (2) disability and/or perceived disability discrimination in violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. 10:5-1 *et. seq.* ("Count Two"); (3) interference in violation of the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601, *et seq.* ("Count Three"); (4) discrimination and retaliation in violation of the FMLA ("Count Four"); (5) gender discrimination in violation of the NJLAD ("Count Five"); (6) retaliation in violation of the NJLAD ("Count Six"); and (7) aiding and abetting illegal discrimination in violation of the NJLAD ("Count Seven"). (*See generally* FAC 18-28.) Beam alleges all Counts against Defendants except for Count Seven, which Beam alleges solely against Tetreault. (*Id.* 28-29.)

Defendants move to dismiss Counts Two, Five, Six, and Seven of the FAC, the NJLAD claims. (ECF No. 36.) Defendants' Motion to Dismiss is now ripe for resolution.

---

[1] This matter was reassigned to the undersigned on September 30, 2022. (ECF No. 45.)

4

II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). "First, the [C]ourt must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[2] Hereafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

## III. DISCUSSION

Defendants primarily move to dismiss the FAC on the basis that the NJLAD, as a matter of law, does not apply to the conduct underlying Beam's claims. (*See* Defs.' Moving Br. 4-5, ECF No. 36-1.) Specifically, Defendants contend that Beam was not employed in New Jersey and has not sufficiently alleged that any discriminatory conduct took place in New Jersey, given that she has lived and worked for the last twenty years in Ohio. (*Id.* at 12.) Defendants further contend that although the NJLAD could apply to the claims of a nonresident, it is inapplicable to Beam because she has failed to allege that New Jersey has the most significant relationship to her claim. (*Id.* at 12-16.) Unsurprisingly, Beam argues to the contrary, claiming that the NJLAD applies to her under the circumstances described in the FAC. (*See* Pl.'s Opp'n Br. 11-16.)

Whether an individual who does not work in New Jersey is entitled to assert a cause of action under the NJLAD against a New Jersey employer remains unresolved by the state's Supreme Court. The New Jersey Appellate Division, however, recently held in *Calabotta* that an out-of-state plaintiff may be entitled to assert a claim under the NJLAD if the plaintiff can demonstrate that New Jersey has the "most significant relationship" to his or her claim. *Calabotta v. Phibro Animal Health Corp.*, 213 A.3d 210, 214, 219-221 (N.J. Super. Ct. App. Div. 2019). In *Donovan*, this Court grappled with *Calabotta*'s holding. *See Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 231-234 (D.N.J. 2021) (citations omitted) (applying *Calabotta*'s framework within the federal pleading regime and holding that "to survive a motion to dismiss under Rule 12(b)(6), an out-of-state plaintiff must allege that New Jersey has the most significant relationship to [her] claim."); *see also Walters v. Safelite Fulfillment, Inc.*, No. 18-11111, 2019 WL 7343481, at *5 (D.N.J. Dec. 31, 2019) (applying *Calabotta* and finding NJLAD claim sufficiently pled at motion to dismiss stage); *Rampersad v. Dow Jones & Co.*, No. 19-11733, 2020 WL 529212, at *4

(D.N.J. Jan. 31, 2020) (denying motion to dismiss for an out-of-state plaintiff's NJLAD claim and determining that "a more fully developed factual record [was] necessary to determine whether the *Calabotta* choice-of-law principles justif[ied] applying the NJLAD to [p]laintiff's claims").

Following the guidance provided by *Donovan* and applying the *Calabotta* choice-of-law framework at the pleading stage, the Court must evaluate whether Beam has asserted sufficient factual allegations in the FAC to adequately allege an NJLAD claim. As a threshold matter, the Court must first determine whether the competing states' laws—Ohio and New Jersey—are in conflict, which is to say whether "application of the different state laws would lead to a different outcome in the case." *See Donovan*, 566 F. Supp. 3d at 231. If there is no conflict, the law of the forum state applies, but if a conflict exists, the Court proceeds to analyze which state has the most significant relationship to the dispute pursuant to Sections 6, 145, and 146 of the Restatement (Second) of Conflicts of Laws. *See id.*

Here, both parties, and the Court, agree that the relevant laws of New Jersey and Ohio present a conflict. Both the NJLAD and the Ohio Fair Employment Practice Law ("OFEPL"), Chapter 4112 *et seq.*, prohibit employers from discriminating against employees for engaging in protected activities or based upon their sex or disability. (*See* Defs.' Moving Br. 13; Pl.'s Opp'n Br. 14.); *see also* N.J.S.A. § 10:5-12(a) ("It shall be an unlawful employment practice . . . for an employer because of . . . sex [or] disability . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment"); *Id.* § 10:5-12(d) ("It shall be unlawful employment practice . . . [f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act . . . ."); Ohio R.C. § 4112.02(A) ("It shall be an unlawful discriminatory practice . . . for any employer . . . because of the . . . sex [or] disability . . . of any person... to refuse to hire or otherwise to discriminate

7

against that person); *Id.* at (I) (explaining that it is unlawful for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice"). The laws, however, have different limitations periods, processes for seeking redress, and damages, which would lead to different outcomes in this case. (*See* Defs.' Moving Br. 13; Pl.'s Opp'n Br. 14-16.) For example, the NJLAD provides that a civil action must be filed within two years of the allegedly discriminatory occurrence and imposes no administrative exhaustion requirement, whereas the OFEPL requires filing within six months of the allegedly discriminatory occurrence and provides that an administrative claim must be filed with the Ohio Civil Rights Commission before claimants may seek a civil action requesting damages. *Compare* N.J.S.A. 2A:14-2 *with* Ohio R.C. § 4112.05(B)(1). Additionally, the NJLAD permits supervisor liability against individuals for aiding and abetting, but the OFEPL only allows an employee to sue managers and supervisors in limited circumstances. *See* N.J.S.A. § 10:5-12(e); Ohio R.C. § 4112; *Donovan*, 566 F. Supp. 3d at 234 ("Because the NJLAD and [the other state's statute] provide for different remedies, a conflict of law exists."). Accordingly, a conflict of laws exists here.

The Court, then, proceeds to the next step of the analysis and considers how the Restatement's choice-of-law principles inform the "most-significant relationship test." *Donovan*, 566 F. Supp. 3d at 233. Section 146 sets forth a presumption that "the local law of the state where the injury occurred" will apply unless "some other state has a more significant relationship . . . ." Restatement (Second) of Conflict of Laws § 146 (1971). Section 145 identifies contacts pertinent to assessing the most significant relationship, including: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* § 145(2). Section 6 lists various considerations bearing

on the question of which state's law should apply, including interstate comity, the interests of the parties, and the competing interests of the states, among others. *Id.* § 6; *see also P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 463 (N.J. 2008) (outlining Section 6 principles).

Defendants contend that Beam's allegations fail to allege "sufficient, if any, contacts with New Jersey" as "[t]he state where she felt the injury was in Ohio, not New Jersey; she resides in Ohio, not New Jersey; she worked in Ohio, not New Jersey; [and] the relationship between the parties centers around [Beam]'s employment in Ohio." (Defs.' Moving Br. 15.) Beam disputes Defendants' assertion that she lived and worked in Ohio during the entirety of her employment and contends instead that she lived and worked for Defendants in New Jersey from 2001 until 2010, when she moved to Kentucky. (Pl.'s Opp. Br. 17.) While Beam concedes that she was assigned an office in Ohio from 2011 through 2016, she highlights that she answered to New Jersey-based management personnel (among others located in different states) and "made regular trips in and out of New Jersey during the year to attend team meetings, trainings, and/or to work on projects, or to attend [HR]/Personnel meetings, sometimes staying overnight in Somerset, New Jersey." (*Id.* at 17-18.)[3]

At the motion to dismiss stage, the Court finds that New Jersey law does not apply. Beam admits that during the time for which she allegedly suffered her injury, she was assigned to work in Ohio and resided in Kentucky, which weighs against a finding of the applicability of New Jersey law under Section 146. (*See* Pl.'s Opp. Br. 17.); *Donovan*, 566 F. Supp. 3d at 234-5. At best, as

---

[3] Beam's Opposition discusses documentation that she alleges "demonstrates that [her] 'employer' was located in New Jersey and that [she] was subject to the laws, rules and regulations of New Jersey." (*See* Pl.'s Opp'n Br. 18.) The Court, however, declines to consider this documentation because it was not detailed in the FAC. (*See generally* FAC.); *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) ("When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings.").

9

the allegations now stand, the only Section 145 factor that weighs in favor of applying New Jersey law is the second factor, which considers the place where the conduct causing the injury occurred. *See Donovan*, 566 F. Supp. 3d at 234. Specifically, Beam alleges that she complained to several J&J employees located in New Jersey and that three retaliatory actions involved connections to New Jersey: (1) the tuition reimbursement lawsuit was filed in New Jersey; (2) New Jersey-based personnel, Gomez, Sharma, and Knipmeyer, played roles in Beam's lower performance ratings; and (3) the persons involved in the decision to terminate Beam included Tetreault and HR, both in New Jersey. (Pl.'s Opp'n Br. 19-20.) The latter point is relevant to the Court's analysis of the Section 145 factors because "if [Beam] can establish that the company's decision to fire [her] was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale." *Calabotta*, 213 A.3d at 229. On balance and at this stage of the litigation, however, these facts do not outweigh the significant contacts that Ohio or, perhaps, now, Kentucky has to Beam's claims. *See id.* ("We do not adopt plaintiff's argument that if the decision to terminate him was made by individuals physically located in New Jersey, that singular nexus must necessarily overcome all other factors that may weigh elsewhere.").

The Section 6 factors further weigh against the application of New Jersey law. For example, the interests of comity do not support application of New Jersey law. As mentioned above, Beam acknowledges that she lived in Kentucky from 2010 onward and was assigned to Defendants' Ohio office beginning in 2011, and the FAC alleges that the discriminatory and retaliatory conduct occurred beginning in 2015. (*See* Pl.'s Opp'n Br. 5, 17; FAC ¶ 22.) Indeed, at no point in the FAC does Beam suggest, for example, that she sought assignment in Defendants' New Jersey offices or that she physically witnessed any discriminatory conduct while in New Jersey. *C.f. Calabotta*, 213 A.3d at 227-28 (explaining that most of the factors under Sections 6,

145, and 146 of the Restatement are "heavily influenced by the fact that the new position sought by plaintiff . . . was going to be located in [New Jersey], where the defendant company . . . is based"). "[O]ccasional contact with New Jersey as part of [a plaintiff's] employment," such as Beam's alleged business trips, "[i]s insufficient to turn those visits into plaintiffs being 'based' in New Jersey for employment purposes." *Schneider v. Sumitomo Corp. of Am.*, No. 09-5094, 2010 WL 2521774, at *2 (D.N.J. June 14, 2010) (quoting *Norenius v. Multaler, Inc.*, No. 449-06, 2008 WL 4162878, at *7 (N.J. Super. Ct. App. Div. Sept. 11, 2008)).

In sum, even considering and accepting as true Beam's allegations that certain conduct underlying her retaliation, discrimination, and aiding and abetting claims occurred in New Jersey, application of the relevant Restatement factors demonstrates that Ohio has the most significant relationship to this matter. As this juncture, the Court concludes that Beam has failed to allege sufficient facts to connect her alleged discriminatory termination to New Jersey and thus avail herself of the NJLAD's protections. The Court will, however, permit Beam another opportunity to amend the FAC because additional factual allegations, as outlined in Beam's Opposition, may potentially impact the analysis.[4]

---

[4] Defendants additionally contend that some of Beam's claims are time-barred by the NJLAD's two-year statute of limitations. (Defs.' Moving Br. 19.) Specifically, Defendants argue that because Beam filed the present suit on December 14, 2020, any NJLAD claim based on allegations of conduct prior to December 14, 2018, is barred. (*Id.*) Defendants further contend that Beam's allegations against J&J, JJS, and Ethicon fail because they have never been her employer and that the aiding and abetting claim against Tetreault should be dismissed because he cannot individually be liable under the NJLAD. (*Id.* at 17-20.) Because the Court grants the Motion on other grounds, the Court declines to address Defendants' other arguments at this juncture.

11

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss as to Counts Two, Five, Six, and Seven. Because the Court will grant Beam leave to amend, Beam should correct the deficiencies identified in this Memorandum Opinion in any amended complaint. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE