**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ERIN MELCHER BEAM, | |
| Plaintiff, | Civil Action No. 20-19217 (MAS) (RLS) |
| v. | **MEMORANDUM OPINION** |
| JOHNSON & JOHNSON *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Johnson & Johnson ("J&J"), Johnson & Johnson Healthcare Services, Johnson & Johnson Services, Inc., Ethicon, Inc., Ethicon US LLC, and Todd Tetreault's ("Tetreault," and collectively, "Defendants") Motion to Dismiss Plaintiff Erin Melcher Beam's ("Beam") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 51.) Beam opposed (ECF No. 54), and Defendants replied (ECF No. 55). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Defendants' Motion.

I.   **BACKGROUND**[1]

This is a case about alleged discrimination and retaliation, brought by a former employee. On December 14, 2020, Beam initiated suit. (Compl., ECF No. 1.) On December 16, 2021, the United States of America declined intervention (ECF No. 11) and the Honorable Freda L. Wolfson, U.S.D.J. (ret.) directed the Clerk of the Court to unseal the matter and restore it to the Court's active docket (ECF No. 12).[2] The First Amended Complaint ("FAC") followed in April 2022, alleging as follows: (1) violation of the anti-retaliation provisions of the Federal False Claims Act, 31 U.S.C. § 3730(h) ("Count One"); (2) Disability and/or Perceived Disability Discrimination in violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J. Stat. Ann. § 10:5-1 *et. seq.* ("Count Two"); (3) Interference in violation of the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601, *et seq.* ("Count Three"); (4) Discrimination/Retaliation in violation of the FMLA ("Count Four"); (5) Gender Discrimination in violation of the NJLAD ("Count Five"); (6) Retaliation in violation of the NJLAD ("Count Six"); and (7) Aiding and Abetting Illegal Discrimination in violation of the NJLAD ("Count Seven"). (FAC 18-28, ECF No. 19.) Beam alleged all Counts against all Defendants except for Count Seven, which Beam alleged solely against Tetreault. (*Id.* at 28.)

On May 23, 2022, Defendants moved to dismiss Counts Two, Five, Six, and Seven of the FAC, the NJLAD claims. (*See generally* First Mot. to Dismiss, ECF No. 36.) Several months later, in the December Opinion, the Court granted Defendants' First Motion to Dismiss. The Court

---

[1] The Court adopts the factual background as recited in its December 28, 2022, Memorandum Opinion (the "December Opinion," ECF No. 46) and only provides additional background and procedural information where relevant for the instant Motion.

[2] This matter was reassigned to the undersigned on September 30, 2022 (ECF No. 45) and then, after further reassignments, was reassigned back to the undersigned on May 31, 2023 (ECF No. 58).

conducted a choice-of-law analysis and concluded that New Jersey law did not apply but allowed Beam another opportunity to amend the FAC to allege additional facts creating a nexus to New Jersey that could impact the Court's analysis. (*Id.* at 11-12.)

On January 23, 2023, Beam filed the Second Amended Complaint ("SAC"). (*See generally* SAC, ECF No. 48.) The SAC alleges as follows: (1) violation of the anti-retaliation provisions of the Federal False Claims Act, 31 U.S.C. § 3730(h) ("Count One"); (2) Disability and/or Perceived Disability Discrimination in violation of the NJLAD ("Count Two"); (3) Interference in violation of the FMLA ("Count Three"); (4) Discrimination/Retaliation in violation of the FMLA ("Count Four"); (5) Gender Discrimination in violation of the NJLAD ("Count Five"); (6) Retaliation in violation of the NJLAD ("Count Six"); and (7) Aiding and Abetting Illegal Discrimination in violation of the NJLAD ("Count Seven"). (SAC 36-48.) Once again, Beam alleges all Counts against all Defendants except for Count Seven, which Beam alleges solely against Tetreault. (*Id.* at 47.)

On February 27, 2023, Defendants moved to dismiss Counts Two, Five, Six, and Seven of the SAC, the NJLAD claims. (S*ee generally* Defs.' Moving Br., ECF No. 51.) The Motion is ripe for resolution.

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[3] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule

---

[3] Hereafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). "First, the [C]ourt must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.   DISCUSSION

For the second time, Defendants move to dismiss on the basis that the NJLAD, as a matter of law, does not apply to the conduct underlying Beam's claims. (*See* Defs.' Moving Br. 8.) Specifically, Defendants contend that Beam failed to sufficiently allege that New Jersey has the "most significant relationship" to her claims. (*Id.* at 11.) Unsurprisingly, Beam argues to the contrary, claiming that the SAC alleges significant contacts with New Jersey. (*See* Pl.'s Opp'n Br. 23, ECF No. 54.)

4

As the Court previously explained, "[w]hether an individual who does not work in New Jersey is entitled to assert a cause of action under the NJLAD against a New Jersey employer remains unresolved by the state's Supreme Court." (Dec. Op. 6.) The New Jersey Appellate Division, however, recently held in *Calabotta* that an out-of-state plaintiff may be entitled to assert a claim under the NJLAD if the plaintiff can demonstrate that New Jersey has the "most significant relationship" to his or her claim. *Calabotta v. Phibro Animal Health Corp.*, 213 A.3d 210, 213-14 (N.J. Super. Ct. App. Div. 2019). In *Donovan*, this Court grappled with *Calabotta*'s holding. *See Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 232 (D.N.J. 2021) (applying *Calabotta*'s framework within the federal pleading regime and holding that "to survive a motion to dismiss under Rule 12(b)(6), an out-of-state plaintiff must allege that New Jersey has the most significant relationship to [her] claim . . ."); *see also Walters v. Safelite Fulfillment, Inc.* ("*Walters I*"), No. 18-11111, 2019 WL 7343481, at *5 (D.N.J. Dec. 31, 2019) (referencing the *Calabotta* choice-of-law framework at the motion to dismiss stage).

Following the guidance provided by *Donovan* and applying the *Calabotta* choice-of-law framework at the pleading stage, the Court must evaluate whether Beam has asserted sufficient factual allegations in the SAC to adequately allege an NJLAD claim. As a threshold matter, the Court would ordinarily determine whether the competing states' laws—Ohio and New Jersey—are in conflict, which is to say whether "application of the different state laws would lead to a different outcome in the case." *See Donovan*, 566 F. Supp. 3d at 231. If there is no conflict, the law of the forum state applies, but if a conflict exists, the Court proceeds to analyze which state has the most significant relationship to the dispute pursuant to Sections 6, 145, and 146 of the Restatement (Second) of Conflicts of Laws. *See id.*

In the December Opinion, the Court already found, in accordance with the views of both parties, that the relevant laws of New Jersey and Ohio present a conflict. (Dec. Op. 7.) As such, the Court now turns to the next step of the analysis and considers how the Restatement's choice-of-law principles inform the "most-significant relationship test." *Donovan*, 566 F. Supp. 3d at 233. Section 146 sets forth a presumption that "the local law of the state where the injury occurred" will apply unless "some other state has a more significant relationship." *Restatement (Second) Conflict of Laws* § 146. Section 145 identifies contacts pertinent to assessing the most significant relationship, including: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* § 145(2). Section 6 lists various considerations bearing on the question of which state's law should apply, including interstate comity, the interests of the parties, and the competing interests of the states, among others. *Id.* § 6; *see also P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 463 (2008) (outlining the Section 6 principles).

Here, the Court finds that Beam fails to sufficiently allege contacts with New Jersey showing that New Jersey has the most "significant relationship" to her claims, including those asserted against Tetreault. *See Donovan*, 566 F. Supp. 3d at 234 n.2 (finding dismissal of NJLAD claims was warranted where the "same conduct underlies [p]laintiff's claims for retaliatory harassment and aiding and abetting liability against [supervisors]"). Under Section 146, the law of Kentucky or Ohio is presumed to apply to this matter because those states are where much of the alleged injuries incurred by Beam, a Kentucky resident who worked remotely for an Ohio office (as explained below) during the relevant time period of the allegations, occurred. (SAC ¶ 50(b).) Based on only the allegations in the SAC, the Section 145 factors weigh in favor of applying Ohio

law—at the very least, not New Jersey law—to this matter. The parties dispute whether Beam reported to an office based in New Jersey, as Beam alleges (*id.* ¶ 50(d) & (e)), or one based in Ohio, as Defendants allege (Defs.' Moving Br. 12). Yet while Beam contends that she did not report to any kind of office in Ohio (SAC ¶ 50(d)), the rest of the SAC belies this conclusory allegation. For example, Beam later alleges that she was hired in 2011 by a wholly-owned J&J subsidiary entity, Ethicon US, LLC ("EES") (SAC ¶ 51). Yet by Beam's own admission in the SAC, EES is a Texas-registered corporation, with its principal place of business in Ohio—and Beam further alleges this entity was her employer "as that term is defined under the [NJLAD]." (*Id.* ¶ 26.) Thus, Beam's discrimination and retaliation claims (from 2011 onwards) occurred while she was employed by an Ohio-based office. (*See* SAC ¶ 52 (alleging that from 2011, when Beam was hired, to 2014 she reported to a senior director based in Ohio).)

Indeed, the conclusion that Beam is employed by an Ohio-based company makes sense considering the nature of Beam's allegations, many of which are instances of discrimination that reference Ohio, not New Jersey. For instance, in Beam's original Complaint, which she incorporated by reference in the SAC (*id.* ¶ 2), Beam discussed the "culture of misogyny on the Cincinnati campus." (Compl. ¶ 129.) In an effort to presumably avoid dismissal of the NJLAD claims, Beam removed such references to Ohio in the SAC,[4] yet the SAC still contains numerous allegations of discrimination in reference to an Ohio office. For example, Beam specifically complains about comments made that referred to the Cincinnati team as the "Khaki Club," because

---

[4] It is true that the Court provided Beam an opportunity to amend the FAC, yet the Court did so "because additional factual allegations" would "potentially impact the analysis." (Dec. Op. 11.) While Beam noticeably added references to New Jersey in the SAC, it is not lost on the Court that she also *removed* numerous references to Ohio personnel and related misconduct. (*Compare, e.g.*, FAC ¶ 25 (allegation of discrimination against "Tony Jordan [("Jordan")], the only Black manager/member of the *Ohio-based* J&J team" (emphasis added)) *with* SAC ¶ 60 (allegation of discrimination against Jordan, "the only Black member of the [m]arketing team").)

the Cincinnati campus was a "predominately white, male-dominated workforce . . . known as an 'old boys' club/network.'" (SAC ¶ 57 & 57(a).) It is unclear how such references would relate to Beam without an understanding that she worked for an Ohio-affiliated employer. And many of Beam's allegations of misconduct are directed at Senior Director Matt Knipmeyer ("Knipmeyer"), who Plaintiff alleges had offices in both New Jersey and Ohio, with several allegations of his misconduct avoiding reference to the location such allegations were made. (SAC ¶¶ 6, 54, 56.) The Court thus remains unpersuaded that New Jersey has the most significant relationship to the claims in this matter, and instead, finds that the allegations in the SAC still suggest Ohio has the most significant relationship.

While the Court previously determined that Ohio law should apply to the instant matter, the Court provided Beam leave to amend in light of suggestions by Beam that the decision to terminate her—one of the key allegations at issue—was affiliated with personnel based in New Jersey. (*See* Dec. Op. 10.) The Court explained that "if [Beam] can establish that the company's decision to fire [her] was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale." *See Calabotta*, 213 A.3d at 229. Running with this, Beam now vaguely alleges that the decision to terminate her was made "at the direction of Tetreault," who is a resident of New Jersey, and that a Human Resource Director from New Jersey was also on the termination teleconference call. (SAC ¶¶ 6, 134.) Yet again, the rest of the SAC suggests that the termination decision was not centered in New Jersey. Beam does not allege that she was in New Jersey at the time she learned of her termination, and she alleges that Massachusetts-based manager, Katie Fischer, was the one who communicated the termination decision to Beam and provided Beam the rationale for her termination. (*Id.* ¶¶ 118, 134.) Even if Tetreault, who lived in New Jersey, was the one who made the decision to terminate Beam, that fact alone is not enough

to overcome the significant contacts that Ohio has to Beam's claims. *See Calabotta*, 213 A.3d at 229-30. ("[The Court] do[es] not adopt plaintiff's argument that if the decision to terminate h[er] was made by individuals physically located in New Jersey, that singular nexus must necessarily overcome all other factors that may weigh elsewhere.").

Finally, the Section 6 factors further weigh against the application of New Jersey law. As the Court previously found, the interests of comity do not support application of New Jersey law. (Dec. Op. 10.) As mentioned above, Beam acknowledges that she lived in Kentucky from 2010 onward and was assigned to Defendants' Ohio office beginning in 2011. And while Beam alleges that she reported certain allegations of misconduct to New Jersey-based personnel (*see, e.g.*, SAC ¶ 56) and now adds that she travels frequently to New Jersey (*id.* ¶ 50(b)), as explained earlier, much of Beam's NJLAD claims are based on conduct by non-New Jersey individuals outside of New Jersey or conduct by individuals without specification to their location. (*See, e.g.*, SAC ¶¶ 123, 135 (complaining that Massachusetts-based Fischer was the one who initially placed her on the performance improvement plan in retaliation for Beam taking medical leave related to Beam's disability).[5] *See Donovan*, 566 F. Supp. 3d at 236 (explaining that the fact that "[p]laintiff worked in New Jersey on a 'semi-regular' basis does not outweigh the interest of New York," where the plaintiff was employed, to the claims at issue); *Walters v. Safelite Fulfillment, Inc.* ("*Walters II*"), No. 18-1111, 2021 WL 1712261, at *1, 3, 8 (D.N.J. Apr. 30, 2021) (finding, in contradiction to *Walters I*, that Connecticut, where the plaintiff currently worked, and not New Jersey, was the state with the most significant relationship to the plaintiff's dispute, even when the

---

[5] As further support for her New Jersey ties, Beam also provides a flurry of allegations related to her receipt of paperwork with New Jersey addresses written on them. (*See, e.g.*, SAC ¶¶ 29-44.) The Court does not find these factual allegations strong enough to make New Jersey the state with the most significant relationship to her claims.

plaintiff claimed he was retaliated against for objecting to the treatment of a female employee at the New Jersey location, at a time when plaintiff both lived and worked in New Jersey). The Court's conclusion is bolstered by its understanding that the application of *Calabotta* is unclear, and prior to *Calabotta*, "New Jersey district courts—and the Third Circuit—routinely dismissed NJLAD claims where the plaintiff was not employed in New Jersey." *Donovan*, 566 F. Supp. 3d at 232 (finding dismissal of NJLAD claims appropriate due to plaintiff's lack of sufficient contacts to New Jersey).

In sum, even considering and accepting as true Beam's allegations that certain conduct underlying her retaliation, discrimination, and aiding and abetting claims occurred in New Jersey, application of the relevant Restatement factors demonstrates that Ohio has the most significant relationship to this matter. At this juncture, the Court once more concludes that Beam failed to allege sufficient facts to connect her alleged discriminatory termination to New Jersey and thus avail herself of the NJLAD's protections. *See Donovan*, 566 F. Supp. 3d at 236.

IV.    **CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss as to Counts Two, Five, Six, and Seven. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE